NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-858

ADOPTION OF EDUARDO.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The father entered into a stipulation for judgment declaring him unfit to parent Eduardo and terminating his parental rights.[2] The stipulation preserved the father's right to seek a hearing on posttermination and postadoption visitation. The judge declined to enter an order for visitation, and the father appeals. We affirm.

We review a judge's decision not to order posttermination or postadoption visitation with the biological parent for abuse of discretion. See Adoption of Xarissa, 99 Mass. App. Ct. 610, 623-624 (2021). In determining whether such visitation is in the child's best interests, the judge must consider whether the child has a "significant, existing bond with the biological

_____

[1] A pseudonym.

[2] The mother also stipulated to the termination of her parental rights. She entered into an open adoption agreement that allows three visits with Eduardo each year. She is not a party to this appeal.

parent" and whether the child "has formed, strong, nurturing bonds" with the preadoptive family.  Adoption of Ilona, 459 Mass. 53, 63-64 (2011), quoting Adoption of Vito, 431 Mass. 550, 563 (2000).  The judge should also weigh "considerations beyond bonding," Adoption of Rico, 453 Mass. 749, 759 (2009), including "other circumstances of the actual personal relationship of the child and the biological parent," id., quoting Adoption of Vito, supra at 562.  Only if postadoption visitation with the biological parent is in the child's best interests does the judge proceed to evaluate whether entering an order instead of leaving visitation to the discretion of the adoptive family is necessary to protect the child's best interests.  See Adoption of Ilona, supra at 65-66; Adoption of Vito, supra at 563.

The record amply supports the judge's determination that postadoption visitation with the father would not be in Eduardo's best interests.  Eduardo has never lived with the father and had no significant bond with him at the time of the hearing.  Eduardo never explicitly or implicitly identified the father as his biological parent to the social worker.  Because of the father's threats to Department of Children and Families (department) social workers, supervised visits occurred either virtually or at the department's office in the presence of a police detail.  Eduardo consistently appeared uncomfortable and withdrawn during visits with the father.

2

Before and after the pandemic, the father was inconsistent about confirming or attending visitation appointments, whether online or in person. The father failed to confirm or attend visits scheduled in February, March, and April 2022. He had not seen Eduardo since November 2021, more than one year before the hearing on postadoption visitation. He informed the department that he had skipped the visits because he "was detoxing himself" and did not want his son to see him in that condition. The judge concluded that the father "has not demonstrated an ability to maintain consistency in visitation, stability in his relationship with Eduardo, and dependability in meeting Eduardo's needs." By contrast, the judge credited the testimony of a department social worker who had observed Eduardo with his preadoptive parents that he "is a completely different person with them. He's playful. He's talkative."

The father asks us to look beyond his lack of a significant bond with Eduardo and consider several other circumstances, including that (1) Eduardo's mother, despite having similar deficiencies as the father in her parental bond and past visitation pattern, enjoys visitation with him through an open adoption agreement with the adoptive parents, see note 2, supra; (2) the father did not have an opportunity to enter into an open adoption agreement; (3) the father currently lives with the mother (now his wife) and shares legal and physical custody of

3

their daughter in New Hampshire; (4) because the mother is unable to drive, the father must drive her to visits with Eduardo; (5) the father demonstrated sensitivity to Eduardo's best interests by consenting to his adoption and ending visits early when Eduardo was uncomfortable; and (6) the father believes it is in Eduardo's best interests to know that both of his biological parents love him.

The first four circumstances, which concern the fairness of the order to the father, are unrelated to the question of Eduardo's best interests. See Adoption of Vito, 431 Mass. at 562 ("an order for postadoption contact is grounded in the over-all best interests of the child, based on emotional bonding and other circumstances of the actual personal relationship of the child and the biological parent, not in the rights of the biological parent nor the legal consequences of their natural relation").

As to the father's contention that he was concerned with Eduardo's best interests, when asked why postadoption visitation with Eduardo would be important, the father told the judge, "because in the state of New Hampshire, at thirteen years old, a child can decide where they want to live. Not at eighteen, thirteen." He predicted Eduardo's decision at the age of thirteen if permitted to visit with the father: "Give me until then, and I'll guarantee my son will want to stay with us." The

4

judge rejected the father's reasoning, stating correctly that "post-termination visitation is not determined by the potential for future reunification with a parent whose rights to the child have already been terminated."  See Adoption of Vito, 431 Mass. at 564-565 (purpose of posttermination contact "not to strengthen the bonds between the child and his biological mother or father, but to assist the child as he negotiates, often at a very young age, the tortuous path from one family to another").

The record supports the judge's conclusion that postadoption contact between Eduardo and the father was not in Eduardo's best interests.  Accordingly, there was no reason for the judge to make findings about whether the preadoptive parents would permit visitation and no error in failing to do so.  The judge did not abuse her discretion in denying the father's request for a visitation order.

Decree affirmed.

By the Court (Milkey, Massing & Neyman, JJ.[3]),

Assistant Clerk

Entered:  March 6, 2024.

---

[3] The panelists are listed in order of seniority.